STATE OF VERMONT
SUPERIOR COURT - ENVIRONMENTAL DIVISION

|  |  |  |
|---|---|---|
| **In re Cote Site Plan Approval** | { | **Docket No. 52-4-10 Vtec** |
| **(Appeal of DRB Decision on Site Plan)** | { |  |
|  | { |  |

## Decision on the Merits

This case concerns Janet Cote's (Appellee) Application for site plan approval regarding her property at 612 Maquam Shore Road and 65 Sandy Cove Road, St. Albans, Vermont (Property) in accordance with the Town of St. Albans (Town) Zoning Bylaws and Subdivision Regulations, last amended July 27, 2009 (Regulations). Due to a prior enforcement action by the Town, the Application must also satisfy the requirements of an August 8, 2008 Decision of this Court. John E. Maslar, Leo Bilodeau, and Jerome Franklin (Appellants) appeal the Town Development Review Board's (DRB) March 16, 2010 decision granting site plan approval.

The Court conducted a site visit to the Property on October 19, 2012 approximately one month in advance of the merits hearing. The site visit was conducted in advance of the hearing to ensure that the Property could be observed without snow cover. Appellant John Maslar, *pro se*, and Appellee, with her attorney Cynthia L. Broadfoot, Esq., participated in the site visit. A merits hearing was held on November 27, 2012 at the Vermont Superior Court, Franklin Civil Division, St. Albans, Vermont. Appellants John E. Maslar and Leo Bilodeau, appearing *pro se*, Appellee, represented by Cynthia L. Broadfoot, Esq., and the Town of St. Albans, represented by Vincent A. Paradis, Esq., participated in the hearing.

## Background

In 2006 the Town issued Appellee a Notice of Violation (NOV) for undertaking activities on her Property without a permit. The alleged activities included digging a drainage ditch, installing an underground pipe, and placing fill in various places on or along the border of the Property. Appellee appealed the Town's NOV to the DRB and subsequently appealed the DRB's decision upholding the NOV to this Court. This Court held a hearing on the issue of the alleged violations. Appellee did not participate in this hearing but rather requested a continuance. This Court denied the continuance and, in a December 19, 2007 Order, affirmed the Town's alleged violations. In re Cote NOV Appeal, Docket No. 273-11-06 Vtec, slip op. at 2 (Vt. Envtl. Ct. Dec. 19, 2007) (Durkin, J.), aff'd Nos. 2008-011, 2008-393 (Vt. July 23, 2009) (mem.).

1

Appellee appealed the December 19, 2007 decision to the Vermont Supreme Court, which stayed the appeal to allow this Court to hear a related enforcement action brought by the Town against Appellee. This related enforcement action concerned whether the Town was entitled to civil penalties and injunctive relief as a consequence of Appellee's zoning violations. In its August 14, 2008 Decision, this Court imposed a civil penalty of $21,630.00 on Appellee and ordered that Appellee apply for Town approval for "all drainage, piping and fill work completed on her property, remedial work already conducted on her property, and any further remedial work she proposes to complete on her property." Town of St. Albans v. Janet Cote, Docket No. 165-8-07 Vtec, slip op. at 8 (August 14, 2008) (Durkin, J.) aff'd Nos. 2008-011, 2008-393 (Vt. July 23, 2009) (mem.). Appellee appealed the 2008 Decision to the Vermont Supreme Court, which, in a July 23, 2009 decision, affirmed this Court's 2007 Order and 2008 Decision. Cote v. Town of St. Albans, Nos. 2008-011, 2008-393 (Vt. July 23, 2009) (mem.).

In November 2008, Appellee first applied for Town approval, as required by the 2008 Decision, for the unpermitted activities that she previously carried out on her Property. The Town requested additional information, and in August 2009 Appellee filed a second application for Town approval. The Town first held a public hearing on the second application on October 22, 2009, followed by a site visit on November 7, 2009. Two additional hearings, on December 10, 2009 and March 11, 2010, followed the site visit. The DRB then issued its March 16, 2010 written decision approving the Application, with conditions. On or about April 8, 2010, Appellants appealed the DRB decision to this Court.

In support of their appeal, Appellants filed a Statement of Questions containing 28 Questions. In advance of the trial, Appellants withdrew 4 Questions, leaving 24 remaining for trial.[1] A majority of Appellant's Questions are stated as though this were an on-the-record appeal; however, this is a *de novo* trial. In this proceeding, we are not concerned with what the DRB did below. See Chioffi v. Winooski Zoning Bd., 151 Vt. 9, 11 ("A de novo trial 'is one where the case is heard as though no action whatever has been held prior thereto'") (quoting In re Poole, 136 Vt. 242, 245 (1978)). Rather, we must consider anew whether the Application complies with the Regulations. See id. In an October 5, 2010 Entry Order, we denied Appellee's motion for summary judgment. In re Cote Site Plan Approval, No. 52-4-10 Vtec (Vt. Super. Ct. Envlt. Div. Oct. 5, 2010) (Durkin, J.). The Entry Order expressly reminded the parties that this is

---

[1] Appellants withdrew their Questions 21, 26, 27, and 28.

a *de novo* proceeding, where the Court will review anew Appellee's site plan to determine if it complies with the Regulations. Id.

Many of Appellants' Questions raise issues involving private property rights, sufficiency of evidence before the DRB, mediation, potential Town liability, and damages. This Court does not have jurisdiction to adjudicate private property rights. See, e.g., In re Britting Wastewater/Water Supply Permit, No. 259-11-07 Vtec, slip op. at 4 (Vt. Envtl. Ct. Apr. 7, 2008) (Wright, J.) ("This Court's consideration of property-related issues and rights is limited to issues within the scope of the regulations governing the permit application."). Our scope of review in this matter is limited to whether the Application complies with the Regulations. Generalizing Appellants' opposition to Appellee's site plan Application, we understand Appellants to be concerned with surface water issues. For instance, many of Appellants' Questions ask whether the site plan restores the natural or pre-existing surface water flow. Appellants' Questions are only within the scope of our review, however, to the extent that they are reviewable under the Regulations. Therefore, we interpret Appellant's remaining Questions as raising only three justiciable questions for our review in this appeal:

1. Whether the site plan complies with Regulations §§ 303 and 315?
2. Whether the site plan complies with Regulations § 411?
3. Whether the site plan complies with the Court's August 14, 2008 Decision?

To the extent that Appellants' Questions raise issues beyond the three questions above, we dismiss Appellants' Questions as outside of our jurisdiction in this appeal.

Based upon the evidence presented at trial, including that which was put into context by the site visit, the Court renders the following Findings of Fact and Conclusions of Law.

## Findings of Fact

1. Appellee owns property at 612 Maquam Shore Road and 65 Sandy Cove Road, St. Albans, Vermont (Property).
2. The Property is generally described as approximately 1.3 acres, 100 feet wide, and 500 feet long.
3. A commercial structure is located at the east end of the Property, and although it is presently vacant, it once contained a store and an apartment.
4. Three residential year-round cottages are located at the southwest end of the Property.
5. Although the Property is close to Lake Champlain, a private road and a row of additional off-site cottages separate the Property from the lake.

3

6. The Property is bordered to the north and west by Sandy Cove Road, to the east by Maquam Shore Road, and to the South by an open field owned by Appellant Maslar.

7. In 2006 and earlier, Appellee undertook several unpermitted activities at the Property, including digging a drainage ditch and placing fill in various places on or along the border of the Property to create soil berms.

8. As part of her compliance with this Court's 2008 Decision, Appellee retained Jennifer A. Desautels, P.E., a project manager and engineer with Trudell Consulting Engineers, to assist Appellee in creating a site plan and obtaining Town approval of the Property.

9. In January 2010, Ms. Desautels performed a site visit to the Property. Ms. Desautels observed the unpermitted soil berms created by Appellee. Ms. Desautels photographed and measured the berms.

10. Ms. Desautels also reviewed relevant maps of the area, a USGS Map of the area, and a topographic survey of the Property compiled by Button Professional Land Surveyors, PC (Button Land Surveyors).

11. Ms. Desautels obtained electronic topographic data from Button Land Surveyors for the Property and used this data to generate a site plan. She also used this data to calculate that the berms contained approximately 25 cubic yards of fill.

12. Appellee retained John Irish, a general contractor, to organize and oversee the berm removal work.

13. Mr. Irish retained Jamie Curtis to excavate the berms from the Property. Mr. Curtis understood that he was retained to remove fill which had previously been deposited at the Property and existed in the form of soil berms and that he was to restore the Property to its original grade.

14. Prior to Appellee's creation of the berms, railroad ties were placed on the Property, and these railroad ties served as one measure of determining the original grade of the Property.

15. In May 2010, over a period of approximately 20 hours of work, Mr. Curtis excavated approximately 20 to 22 yards of fill from the Property and transported the fill off-site.

16. Mr. Curtis also understood that an engineer would inspect his work and certify that all fill was removed and that the Property was returned to its original grade.

17. When Mr. Curtis finished his excavation work, he believed that there were no remaining soil berms at the Property.

18. Mr. Irish assisted Mr. Curtis with removing the pre-existing railroad ties along Sandy Cover Road and witnessed Mr. Curtis excavating and trucking fill off of the Property.

19. Mr. Irish has mowed the lawn at the Property both with the berms and after they were removed. With the berms in place along Sandy Cove Road, Mr. Irish had to use a weed trimmer to cut the grass covering the berms. Following berm removal, Mr. Irish could use a lawn mower to mow right up to Sandy Cove Road.

20. Appellee installed a curtain drain at the Property for the purpose of directing surface water away from an existing septic system. This drain was removed in 2007 and no longer is present at the Property.

21. The elevation of Sandy Cove Road is slightly higher than the elevation of Appellee's Property. As one travels west on Sandy Cove Road, toward Maquam Shore Road, Sandy Cove Road's elevation above Appellee's Property increases. Thus, any surface water on Appellee's Property cannot naturally flow over or across Sandy Cove Road until the standing water exceeds the elevation of Sandy Cove Road.

22. Jewett Road, located west southwest of the Property, also has a higher elevation than both the Property and Appellant Maslar's adjoining property.

23. A berm is located south of the Property wholly upon Appellant Maslar's property.

24. After Mr. Curtis finished his soil excavation and removal work, Ms. Desautels conducted a site visit to the Property on June 2, 2010. Ms. Desautels observed that all the berms on the Property had been removed, and Ms. Desautels again noted that the Property was very flat and that Sandy Cove Road was slightly elevated above the Property along its northern boundary.

25. On June 3, 2010, Ms. Desautels certified to the Town that all berms on the Property had been removed. She made this certification by written letter and attached photographs.

26. Appellant Bilodeau maintains Sandy Cove Road, including removing snow with a plow truck. Sometimes during snow removal, material from Sandy Cove Road is scraped or "windrowed" onto Appellee's property. As part of his maintenance work, Appellant Bilodeau adds fill to and grades Sandy Cove Road.

### Conclusions of Law

Appellants appeal the DRB's March 16, 2010 site plan approval awarded to Appellee. Although Appellants raise many questions, the scope of our review in this case is limited to whether Appellee's site plan Application complies with the Regulations and the Court's August

5

14, 2008 Decision. We first address compliance with the Regulations and then address compliance with the Court's 2008 Decision.

## I.  Regulations §  303 – Site Plan Approval

To obtain site plan approval from the DRB, Appellee's Application must include a site plan depicting contoured features of the existing site, watercourses and wetlands, vegetation and natural features, structures, access points, easements, exterior lighting, size design and location of signs, and property and zone boundaries. Regulations § 303(1)(A).  Appellee's Application includes a site plan prepared on February 18, 2010 by Trudell Consulting Engineers.  Appellee's Exhibit B.  The plan expressly states that its purpose is to provide visual representation of existing conditions and runoff patters.  The plan shows contoured features of the site (including soil berms), wetlands (existing off-site to the south), vegetation  (trees and an area of disturbed ground), natural features (swales in the southwest corner of the site), structures (a store with an apartment, three year-round homes labeled as "buildings," and a shed), access points (shown as gravel drives), and property boundaries.  Also included with the Application is a Button Land Surveyors Topographic Survey Map dated September 2009 showing topography contours, features and structures of the Property, and the lands to the south of the Property.  Appellee's Exhibit C.  Thus, the Application, including Exhibits B and C, complies with Regulations § 303(1)(A).

Appellee's Application must also show any proposed improvements to the Property, including drainage and site grading.  Regulations § 303(1)(B).[2]  As described above, Appellee's site plan provided as Exhibit B shows runoff or drainage patterns.  Appellee's Application includes a second version of the February 18, 2010 Trudell Consulting Engineers site plan showing "existing berms removed as of 5/29/2010 elevation returned to original grade." Appellee's Exhibit E.  We conclude that the Application, including the two versions of the Trudell Consulting Engineers site plan, complies with Regulations § 303(1)(B).

Lastly, Appellee's Application must show any proposed protections and/or enhancements of watercourses, wetlands, and other natural features to be utilized during and after construction.  Regulations § 303(1)(C).  Again, as described above, Appellee's Exhibits B, C, and E satisfy the requirements of Regulations § 303(1)(C).

The remaining subsection of Regulations § 303 are not relevant to Appellee's activities at the Property and are therefore not relevant to site plan review in this appeal.

---

[2] Other improvements listed in Regulations § 303(1)(B) are not relevant to Appellee's site activities.

Thus, we conclude that Appellee's Application complies with Regulations § 303.

## II.     Regulations § 315(3) – Lakeshore District

Regulations § 315(3) provides the objective and description of the Lakeshore District, the zoning district in which the Property is located.  This section also lists the permitted and conditional uses allowed within the Lakeshore District and establishes the dimensional requirements for properties within the District.  Although Appellants' Statement of Questions is reasonably interpreted to raise issues of compliance with this section of the Regulations, Appellants have not provided the Court with any testimony or evidence of the Application not complying with the Lakeshore District standards.  Furthermore, as Appellee is not proposing a new or different use of the Property, and is not proposing new or altered structures or other physical alterations other than reversing previously unpermitted filling and drainage, we fail to see any potential non-compliance issue with this section of the Regulations.  Thus, we conclude that the Application complies with Regulations § 315(3).

## III.    Regulations § 411 - Landfilling, Site Excavation, Underground Services and Drainage

Section 411, entitled Landfilling, Site Excavation, Underground Services and Drainage, requires that any land alteration or excavation that would cause a substantial change in the volume, velocity, or direction of drainage must obtain site plan approval.  Regulations § 411(2).  As discussed above, we conclude that Appellee's Application satisfies the Regulations' site plan approval requirements.  In addition to site plan approval, Regulations § 441(2) requires that an applicant:

A.  Submit an acceptable plan showing existing and proposed finish grades of the site (to demonstrate that the site will be left in a usable condition);

B.  Agree to cover the finished grades, except exposed ledge rock, with a least three (3) inches of topsoil and seed with a suitable crop cover upon completion of the operation;

C.  The Development Review Board may require an applicant to post a performance bond or a letter of credit sufficient to guarantee restoration of the site.

Appellee's Application provides a site plan and topographic survey map, Exhibits B and C, showing existing grades of the site.  Additionally, Appellee's Application includes a site plan, Exhibit E, showing finished grades; this site plan shows the Properties' grades following berm removal.  Appellee's witnesses testified to the ground cover following berm removal and

7

stated that these areas were easily mowed. Exhibits admitted on behalf of Appellee show ground conditions immediately following berm removal. See Appellee's Exhibit D. These pictures show top soil remaining as the ground cover. The soil is now covered by grass. According to Ms. Desautels, the site was left in a usable condition. Ms. Desautels was impressed with the excavation work which left the Property smooth and without elevation change. Appellants provided no credible testimony to refute Appellee's compliance with Regulations § 411(2)(A) & (B).

With respect to the discretion to require a performance bond or letter of credit pursuant to Regulations § 411(2)(C), we find this protection unnecessary as the work is already complete. See Appellee's Exhibit D certifying completion of berm removal by June 2, 2010. We conclude that the Application complies with Regulations § 411.

### IV.     Compliance with the Court's August 14, 2008 Decision

Appellants assert that Appellee has not satisfied the injunctive relief of this Court's 2008 Decision. Again, the core of Appellants' concerns focus on surface water flow issues and soil berms, which, according to Appellants, have the potential to alter surface water flow.

In its August 14, 2008 Decision this Court ordered that Appellee pay a civil penalty and, not later than November 12, 2008, apply for Town approval for "all drainage, piping and fill work completed on her property, remedial work already conducted on her property, and any further remedial work she proposes to complete on her property." Town of St. Albans v. Janet Cote, Docket No. 165-8-07 Vtec, slip op. at 8 (August 14, 2008) (Durkin, J.) aff'd Nos. 2008-011, 2008-393 (Vt. July 23, 2009) (mem.). To put the Court's injunctive relief into better context, the Court in the 2008 Decision found that Appellee had already remedied a portion, but not all, of the unpermitted activities on the Property. Id. at 5.. The Court found that Appellee had filled in the unpermitted drainage ditch and had removed some, but not all, of the unpermitted fill on the Property. Id. This partial remedial work was undertaken without Town review or approval. Id. Thus, this Court's 2008 Decision sought review and approval of all remedial work, past and future. Importantly, the 2008 Decision also stated that the Court could not discern the direction in which surface water flows across the Property, either prior to the unpermitted ditching and fill activities or prior to the partial remedial activities. Id.

In the present appeal, no party argues or provides any evidence as to whether Appellee has complied with the 2008 Decision to pay a civil penalty. Thus, we do not review this aspect of the 2008 Decision.

8

Appellee initiated the process of satisfying the 2008 Decision on November 5, 2008 by filing an application for site plan approval. Town Zoning Administrator Rebecca Bushey provided written notice to Appellee on December 2, 2008 that the site plan application was incomplete. Thereafter, Appellee filed an amended application in August 2009 in an attempt to satisfy the Town's concern over the original incomplete application. Ultimately, Appellee retained Ms. Desautels to assist in obtaining Town site plan approval of Appellee's unpermitted site work, and past and future remedial work. With Ms. Desautels' engineering services and assistance, Appellee obtained DRB site plan approval on March 16, 2010. As concluded above, the Application complies with the Regulations, and therefore, we conclude that Appellee has complied with the Court's 2008 Decision.

## V.    Additional Findings

This matter has a long history of related proceedings before the Town, this Court and the Supreme Court, during which Appellants' concerns have focused on surface water flow issues and soil berms at the Property. In light of this history and Appellants' concerns, we note the following additional credible evidence in this matter. Ms. Desautels, the only Professional Engineer to provide testimony and evidence to the Court, credibly described the Property's topography, with or without the berms, to be like a bathtub. Any surface water that collects on the Property cannot simply run off the Property, but rather must infiltrate into the soil. This is because the roadways bordering the Property are elevated and effectively prevent surface water from flowing off the Property. Accordingly, in Ms. Desautels' opinion, the unpermitted soil berms created by Appellee had no effect on surface water flow in the area of the Property.[3]

Throughout this proceeding, Appellants have expressed particular concern that Appellee's activities on her Property have directed and continue to direct surface water onto Appellant Maslar's adjoining field. Ms. Desautels testified that while she did not enter Mr. Maslar's field to the south of the Property, she did observe the middle section of the field appearing wet. Ms. Desautels noted, however, that Jewett Road, bordering the west side of the Maslar field, and a private driveway, bordering the south side of the Maslar field, both had significantly higher elevations than the Maslar field. As a result, these features impede surface water from flowing from the Maslar field west and south ultimately into the lake. See

---

[3] Originally, Ms. Desautels designed a site plan with the berms remaining in place, because, in her opinion the berms did not alter surface water flow. At the Town's insistence, Ms. Desautels revised the site plan to include the removal of all berms. Appellee has fully carried out this revised site plan.

Appellee's Exhibit L. Furthermore, Ms. Desautels observed a large culvert under Maquam Shore Road which connected surface water flow from approximately 50 acres of agricultural fields on the east side of Maquam Shore Road to the Maslar field. See id. Thus, even though Appellee has successfully remediated the Property to conditions before the creation of the unpermitted soil berms, it appears that there are topographic and surface water flow features separate and apart from anything on Appellee's Property that may continue to contribute to the wet conditions on Appellant Maslar's property and other properties in the area.

## Conclusion

For the reasons detailed above, we conclude that:

1.  The Application complies with Regulations § 303 – Site Plan Approval; Regulations § 315(3) – Lakeshore District; and Regulations § 411 – Landfilling, Site Excavation, Underground Services and Drainage; and

2.  The Application complies with the Court's August 14, 2008 Decision.

A Judgment Order accompanies this Decision. This completes the current proceedings before this Court.

Done at Berlin, Vermont this __th day of March, 2013.

Thomas G. Walsh,
Environmental Judge